IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 03-417-1 |
| v. | : | |
| | : | CIVIL ACTION |
| ROLAND MILES [#57599-066] | : | NO. 05-658 |

**<u>SUPPLEMENTAL REPORT AND RECOMMENDATION</u>**

DAVID R. STRAWBRIDGE                                                                              September 29, 2006
UNITED STATES MAGISTRATE JUDGE

      On January 24, 2006, this Court filed a Report and Recommendation concerning the *pro se* motion of Roland Miles (alternatively "Defendant" or "Miles") to Vacate, Set Aside, or Correct Sentence filed pursuant to 28 U.S.C. § 2255.  In our Report, we were willing to consider Miles's petition timely filed and evaluated the merits of his two claims: first, that his sentence violated his Fifth and Sixth Amendment rights as determined by the Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005), and second, that his counsel was ineffective for failing to file an appeal of his sentence.  We concluded that neither claim had merit.  As a result, we recommended that the petition be denied.  Miles filed objections on February 3, 2006.

      On April 11, 2006, this case was transferred to the Honorable Jan E. DuBois.  By Order dated May 12, 2006, Judge DuBois instructed us to hold an evidentiary hearing to develop a record as to Miles's claim of ineffective assistance of counsel in light of *Campusano v. U.S.A.*, 2006 U.S. App. LEXIS 8182 (2d Cir. Mar. 23, 2006) and *U.S.A. v. Wales*, 2006 U.S. App. LEXIS 9478 (10th Cir.

Apr. 13, 2006).[1]  Specifically, we were asked to explore "whether, following sentencing, defendant instructed his attorney to file a Notice of Appeal" and to prepare a Supplemental Report and Recommendation.  (Doc. No. 27.)

We appointed counsel for Miles and held an evidentiary hearing on September 25, 2006.  For the reasons set forth below, this Court again **RECOMMENDS** that the motion be **DENIED**.

I.      FACTUAL BACKGROUND

   A.      The record established at the guilty plea and sentencing hearings

The conviction that gives rise to this petition was for one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  As recited by the Government at a hearing held on September 15, 2003,[2] a police officer recognized Miles as he rode in the passenger seat of a car on June 6, 2003.  The officer knew that he was the subject of an outstanding warrant relating to

---

[1] *Campusano* stands for the proposition that if a client explicitly requested that his attorney file an appeal, the failure to do so — even if such an appeal was believed by the attorney to be frivolous because the client waived appeal rights in a plea agreement — constitutes deficient performance that prejudices the client.  In *Wales,* the court explained that it would not enforce a waiver of collateral review if a defendant were denied the opportunity to appeal because his attorney ignored his requests to appeal.  Ultimately, however, the court in *Wales* determined that there was insufficient evidence that Mr. Wales did, in fact, instruct his attorney to appeal and, further, that his attorney was not ineffective for failing to file an appeal under the circumstances.

In Section II, *infra*, we discuss the facts of this case in light of the United States Supreme Court decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), to which both the *Campusano* and *Wales* courts cited.  Pursuant to *Flores-Ortega*, an attorney's failure to file an appeal requested by a client would amount to a Sixth Amendment violation, and a failure to consult with a client regarding an appeal could constitute deficient performance, depending on the circumstances.

[2] The transcript of that proceeding was not filed until August 8, 2006.  We did not have its benefit at the time we issued our first Report and Recommendation.

unpaid child support. When the officer approached Miles, advised him of the warrant and sought to place him under arrest, Miles resisted and a struggle ensued. Another officer on the scene employed pepper spray. Miles pulled a gun from the front pocket of his pants, which caused the other officer on the scene to yell "gun" several times, draw his own weapon, and radio for additional backup. Miles's firearm fell to the ground in the course of the struggle with the first officer and he was eventually restrained. His gun was found to be loaded, with a live round in the chamber and the hammer cocked. (N.T. 9/15/03 at 24-25.)

The charge subjected Miles to a statutory maximum sentence of ten years imprisonment. He entered into a plea agreement in which he expressly waived "all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution," whether by direct appeal or collateral attack, with the exception of a direct appeal raising a claim either that his sentence "exceeds the statutory maximum" or that "the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range." (Doc. No. 10 at 4, 5.) Miles stipulated to the pertinent facts for a conviction under 18 U.S.C. § 922(g)(1), as well as the fact that his offense involved a firearm with an obliterated serial number, subjecting him to an enhancement of his base offense level under the Sentencing Guidelines. (*Id.* at 3-4.)

The Court reviewed in detail the terms of the guilty plea agreement with Miles at the September 15, 2003 hearing. The Court also reviewed with Miles the base offense and criminal history calculations that would be appropriate under the Sentencing Guidelines, including applicable enhancements and reductions in the offense level score. (N.T. 9/15/03 at 12-15.) The Government raised the issue of an additional enhancement for "recklessly endangering a police officer while resisting arrest." (*Id.* at 15.) The Court asked Miles whether, in his judgment, there was any factual

basis for that contention. Miles stated that there was not. (*Id.* at 16.) However, when asked if he still wanted to enter a guilty plea "knowing what the Government's posture is going to be at the time of sentencing," Miles said that he did, because he preferred a timely resolution. (*Id.* at 17.) Miles acknowledged that his right to challenge this proposed enhancement at the sentencing hearing was preserved but that the Court would make the final decision. (*Id.* at 18, 22.)

On October 23, 2003, the probation office prepared a Presentence Investigation Report.[3] The report recounted the struggle that ensued when the police officer attempted to place Miles under arrest pursuant to the outstanding bench warrant and the circumstances under which Miles's gun possession was discovered. Based on those facts,[4] the probation officer suggested that a 3-point enhancement be applied pursuant to U.S.S.G. Section 3A1.2(b)(1).[5] The Presentence Report acknowledged that Miles did not point the gun at anyone, but concluded that Miles's struggle, while he was in possession of a loaded and cocked firearm, created a substantial risk of serious bodily injury to the various police officers on the scene. (Hrg. 9/25/06, Gov't Ex. 2, ¶ 16.)

On November 25, 2003, Miles's retained counsel, P.J. Redmond, wrote to the probation

---

[3] A revised report dated December 1, 2003 (believed to have been revised to reflect a new offense in Miles's criminal history of which the probation office was initially unaware) was marked at the evidentiary hearing as Gov't Ex. 2.

[4] The report does not appear to detail the source of the information presented regarding the circumstances of the arrest.

[5] This section of the Sentencing Guidelines states that a 3-point enhancement is warranted when, "in a manner creating a substantial risk of serious bodily injury, the defendant ... [,] knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom ...." The "application notes" to the section explain that "subsection (b) may apply in connection with a variety of offenses that are not by nature targeted against official victims" but that "its applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a 'substantial risk of serious bodily injury.'"

officer to address the issue of the proposed enhancement. He contended that, because Miles did not point the gun at anyone (as the Presentence Report stated), "he did not make the sort of affirmative conduct which would cause substantial risk of serious bodily injury, as that term would require to boost the sentencing 3 levels as proposed." (Hrg. 9/25/06, Pet'r Ex. B.) In an addendum to the Presentence Report dated December 1, 2003, the probation officer acknowledged the objections made by defense counsel to the propriety of a Section 3A1.2(b)(1) enhancement but defended the proposed enhancement:

> The defendant could have exited the vehicle, put his hands up and told the officers he had a gun. It cannot be lost that Mr. Miles had been arrested several times prior and knew the "procedure." He did not peaceably submit to arrest. Instead, he created a huge crisis which resulted in police guns being drawn, police pepper spray being used, and he placed several police officers in danger of a substantial risk of serious bodily injury. In fact, Mr. Miles could have been shot in this matter. Mr. Miles' type of assaultive conduct is very consistent with Application Note 4(a) of U.S.S.G. §3A1.2.
>
> It seems disingenuous to treat Mr. Miles the same, under the guidelines, as other armed defendants who peaceably surrender.

(Hrg. 9/25/06, Gov't Ex. 2, Add. p. 2.) The addendum concluded with the statement that "[t]he Court will have to determine this issue." (*Id.*)

At the sentencing hearing held on January 21, 2004, the probation officer testified about the applicability of the Section 3A1.2(b)(1) enhancement. Attorney Redmond urged the Court not to apply the enhancement, contesting that Miles had actually "drawn" the gun on a police officer. The Court, however, concluded that taking out a gun in the presence of the police and when Miles was in physical contact with the police was reckless and applied the enhancement. (N.T. 1/21/04 at 11-18.)

At the conclusion of the sentencing hearing, Attorney Redmond advised Miles on the record that he had 10 days to file an appeal of the sentence and that an attorney would be provided to him if he wished to take an appeal. (*Id.* at 44-45.) No appeal was filed and his conviction became final on January 31, 2004.

### B.  The testimony at the evidentiary hearing

At the evidentiary hearing, Attorney Redmond testified that Miles did not ask him to take an appeal following the sentencing and that he did not recall ever discussing with Miles the possibility of taking an appeal at any time following the sentencing hearing. (N.T. 9/25/06 at 17.) While he remembered one telephone call from Miles post-sentencing, he could not recall the subject matter of that conversation.[6] In any event, he testified that the conversation took place "months" after Miles was sentenced, and definitely not within the 10-day period of time in which an appeal could have been filed. (*Id.* at 17, 34-35, 42-43.) He did not recall receiving any written communication from Miles, or from anyone acting on his behalf, subsequent to the sentencing. (*Id.* at 41-42.)

Miles also testified at the hearing. When asked pointedly if he requested Redmond to file an appeal for him, he answered "yes." (*Id.* at 47.) When asked if he spoke with Redmond in the courtroom following the sentencing, he said that Redmond "brought up something about direct appeal" and that "I was saying, well, in my terms, I don't care what - - you know, I would rather that happen, but - - you know, I was so illiterate, I just wanted to get where I was going. So - - ." (*Id.* at 47.) He testified that he did not ask Redmond to appeal at that time, immediately following sentencing, but that he tried to get in touch with Redmond "numerous times" concerning an appeal

---

[6]  Redmond had represented Miles in other matters as retained counsel. (N.T. 9/25/06 at 19.)

6

and that they "finally did contact each other a couple months down the line." (*Id.* at 46, 47, 54.) When asked if he attempted to get in touch with Redmond within the 10-day appeal period, Miles responded that he did try by "calling numerous times." (*Id.* at 54.) He believed he tried calling Redmond "once or twice" while he was still housed at the Federal Detention Center in Philadelphia — where he was held for three weeks following sentencing — but did not reach anyone in Redmond's office. (*Id.* at 55.)[7] He could not recall the precise date he first tried to get in touch with Redmond, but testified that on his first attempt, no one answered the phone. (*Id.* at 55-56, 59-60.) Miles confirmed Redmond's account that he sent no written correspondence following the sentencing regarding taking an appeal. (*Id.* at 58-59.)

When asked about the sentence enhancement, Miles asserted on direct examination that he arrived at the sentencing hearing "under the understanding that I was going to get sentenced between 57 and 71 months. And, now this three point enhancement was - - it was new to me at the time of sentencing." (*Id.* at 45.) On cross-examination, however, Miles admitted: (1) that he became aware at the September 15, 2003 hearing that the government would seek an enhancement at sentencing, (2) that he reviewed the Presentence Report prior to the sentencing hearing, and (3) that he was aware of his attorney's challenge to the enhancement both in submissions made prior to the sentencing hearing and in argument at the sentencing hearing itself. (*Id.* at 44-45, 48-52.) Miles also testified that it was a few months after sentencing that he first learned about the issues raised in the *Apprendi, Blakely* and *Booker* cases. (*Id.* at 47-48, 58.)

---

[7] Miles explained that "numerous times nobody answered." At the point in time in which he was being housed in the Allenwood prison, he got in touch with Redmond's secretary. But at the point in time in which he was still being held at the Philadelphia FDC, he "didn't get in touch with nobody." (N.T. 9/25/06 at 55.) He offered no evidence on the content of any message he may have left when he spoke with the secretary.

### C. Factual findings

We are unable to conclude that Miles made a request of his attorney to file an appeal of his sentence prior to the January 31, 2004 date when his appeal rights expired. We note initially that the petition and accompanying brief do not identify with any particularity when such a request was made. Further, his own hearing testimony was not particularly helpful to his position. He could date his first attempt to "get in touch with" his attorney no further than within his 3-week stay in the Philadelphia Federal Detention Center following the sentencing. He did not present any records to support a call being placed during that time period. Thus, he has failed even by his own testimony to establish the central allegation of his petition — that he told his attorney to file an appeal within the 10-day period that the appeal had to be filed.

In addition, we have serious concerns about his credibility. Initially, his hearing testimony consisted of a vigorous assertion that he had no prior notice that the government would seek an enhancement until the day of the sentencing. His counsel took him through a series of questions tending to suggest that he was surprised by the enhancement request. (N.T. 9/25/06 at 44-46.) This testimony was specifically contradicted, however, when the government confronted him with the transcript of the guilty plea colloquy, the Presentence Report, and Redmond's challenge to the recommendations contained in the Presentence Report. Similarly, Miles's hearing testimony concerning the manner in which he requested his attorney appeal contradicts the assertions made in his papers. In the *pro se* brief he submitted on February 23, 2005, he asserted that he "repeat[ed]ly asked his trial Counsel through verbal *and written correspondence* to file[] his Direct Appeal to challenge the 3 point enhancement that he Received at Sentencing under Adjustment for [Official] victim (USSG) 3A2.2(b)(1)." (Doc. No. 17 at 2 (emphasis added).) At the hearing, however, he

testified that he did not write to Redmond concerning an appeal. Finally, the circumstances surrounding the filing of his petition, which concerned us even at the time we filed our initial Report and Recommendation, suggest that he may not have been entirely forthright.[8]

In addition, Miles's assertions simply do not comport with common sense. We can see no reason why, after deciding to go forward with the guilty plea and waiver of appellate rights notwithstanding the unresolved issue of the Section 3A1.2(b)(1) enhancement, he would then decide to challenge his sentence — particularly where his guilty plea agreement precluded such a challenge. It also strikes us as improbable that he would not ask Redmond to file an appeal at the time his attorney allegedly spoke with him about an appeal (at the conclusion of the sentencing hearing) yet that he would manifest a desire to appeal at some point less than 10 days later.

We think it more probable that Miles saw no basis for challenging his sentence until he learned of the developments surrounding the *Apprendi, Blakely* and/or *Booker* cases, which he testified was some months after his sentencing. We also note that, although he claims to have asked his lawyer repeatedly to file an appeal, he does not suggest that Redmond gave him any false

---

[8] We gave Miles the benefit of the doubt in our initial Report and Recommendation that he initiated this habeas action in a timely manner. We share the Government's concern, however, that Miles was disingenuous regarding the date of operative events. The *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 16) was represented as having been "executed (signed)" on "01/30/05" — which was one day prior to the expiration of the limitations period. Miles did not, however, complete an adjacent section of the form in which he was asked to "declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct *and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ (month, date, year)*" (emphasis added) — which is the operative event for a prisoner to benefit from the prison mailbox rule. As we noted in our original Report and Recommendation, although the form was purportedly "executed" on January 30, 2005, it was not postmarked until February 9, 2005. Furthermore, there is no doubt that Miles was aware that the timeliness of his petition would be an issue, as he addressed the subject as a second "ground" for his petition. *See* Doc. No. 16 at 6; Doc. No. 17 at 3.

assurances that he would do so as to excuse his failure to take any action himself to vacate his sentence until a full year later. His failure to take any actions to challenge his sentence until shortly after the issuance of the *Booker* decision suggests to us that he saw no basis for filing an appeal at the relevant time.

On the question presented to us by Judge DuBois's remand order, then, we find that, following sentencing, Miles did not instruct his attorney to file a Notice of Appeal within the time period required for such a filing, that is, on or before January 31, 2004.

## II. LEGAL DISCUSSION

In his petition, Miles asserts ineffective assistance of counsel for failure to file a direct appeal of his sentence regarding this enhancement. He contends that, had Attorney Redmond filed an appeal, the issue of the propriety of this enhancement would have been under appellate review at the time the United States Supreme Court rendered its decision in *United States v. Booker*, 125 S. Ct. 738 (Jan. 12, 2005), and the Third Circuit would have remanded his case for re-sentencing without the three-point enhancement. (Doc. No. 17 at 1-2.) In his papers, Miles affirmatively asserts that he asked his attorney to file an appeal on his behalf. (Doc. No. 16 at 4; Doc. No. 17 at 2; Doc. No. 19 at 6.)

### A. Legal standard

In our initial Report and Recommendation, we recounted the familiar two-prong test that a petitioner must satisfy before a court will find that counsel did not provide effective assistance consistent with the Sixth Amendment. Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show: (1) that his attorney's representation fell well below an objective standard

of reasonableness; and (2) that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Id.* at 688-96. However, where, as here, the basis of the defendant's ineffective assistance claim is counsel's failure to appeal, a more specific version of the *Strickland* standard set forth by the Supreme Court in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), applies. *See Harrington v. Gillis*, No. 02-2419, slip op. at 9 (3d Cir. July 11, 2006).

Pursuant to *Flores-Ortega*, in order to address the first prong of *Strickland,* we first must inquire as to whether counsel consulted with his client regarding an appeal. If counsel did so and did not follow express instructions to file an appeal, then he is deemed to have performed in a professionally unreasonable manner. *Flores-Ortega*, 528 U.S. at 478. If counsel did *not* consult with his client on the issue of taking an appeal, he *may* be deemed to have performed in a deficient manner *if* there was reason to think *either* (1) that a rational defendant would want to appeal, *or* (2) that this client reasonably demonstrated that he was interested in appealing. *Id.* at 478-80.

With respect to the prejudice prong of *Strickland*, the Supreme Court has determined that we are to assume prejudice if the defendant requested that his attorney file an appeal and the attorney ignored that request. *Id.* at 484. Where the deficient performance is the attorney's failure to consult regarding an appeal, however, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him, he would have timely appealed. *Id.* Relevant factors in this determination include whether the defendant pled guilty (as this decreases the likelihood of appealable error and could reflect a defendant's desire to conclude all proceedings quickly), whether he waived his appeal rights in a plea agreement, evidence of nonfrivolous grounds for appeal, and whether he received the sentence bargained for. *Id.* at 480, 485-86.

### B. Miles was not deprived of his Sixth Amendment right to counsel

Our finding that Miles did not ask his attorney within the 10-day appeal period to file an appeal answers the initial question identified in *Flores-Ortega*. The fact that Miles did not instruct his attorney to file a notice of appeal, however, does not conclusively resolve the question of whether counsel was ineffective for failing to file an appeal. We must consider whether, following the Court's imposition of sentence, counsel should have consulted with Miles about an appeal and "advis[ed] [him] about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478.[9]

Taking into consideration all relevant factors, we conclude that Attorney Redmond had no duty to further consult with Miles about an appeal following the sentencing hearing in that there was

---

[9] As the Supreme Court noted in *Flores-Ortega*, the failure to consult does not necessarily establish a Sixth Amendment *Strickland* violation:

> We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. *See [Strickland v. Washington*, 466 U.S. at 689] (rejecting mechanistic rules governing what counsel must do). For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," *id.* at 691, as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

*Flores-Ortega*, 528 U.S. at 479-80.

no reason to think that a rational defendant in these circumstances would want to appeal or that Miles reasonably demonstrated to Redmond that he was interested in appealing. We note initially that Redmond advised Miles of his appeal rights on the record at the close of the sentencing hearing. *See* N.T. 1/21/04 at 44-45. Both Miles and Redmond testified that Miles did not request an appeal in their conversation following the conclusion of the sentencing hearing — even though, according to Miles, the subject of an appeal came up. *See* N.T. 9/25/06 at 47.

We also note that "a highly relevant factor" identified by the Supreme Court in the inquiry as to counsel's duty to consult on an appeal — the fact that Miles entered a guilty plea, as well as the history behind that plea — supports our conclusion. The guilty plea agreement in this case reduced the scope of potentially appealable issues to two: that the sentence exceeded the statutory maximum or that the sentencing judge "erroneously departed upward from the otherwise applicable sentencing guideline range." Neither would have applied to Miles's case, as the Court's sentence was at the lowest end of the range provided for in the Sentencing Guidelines for a defendant with the offense level and criminal history score calculated by the Court and was well below the statutory maximum. While it is now the law that a sentencing court may not apply enhancements based on facts not proven beyond a reasonable doubt, such was not the state of the law at the time of Miles's sentence and when his appeal period expired.[10] Therefore, we cannot say that there were

---

[10] In *Blakely v. Washington*, 124 S. Ct. 2531 (2004), the Supreme Court held that a *state's* sentencing procedure did not comport with the Sixth Amendment because a finding that affected the defendant's sentence was made by a judge rather than a jury. The Court held that any increase to a sentence imposed by a judge must be based on facts reflected in the jury verdict or admitted by the defendant. *Blakely*, 124 S. Ct. at 2537. The *Blakely* decision was not issued, however, until June 24, 2004. In *United States v. Booker*, 125 S. Ct. 738 (2005), the Court determined that the *Blakely* principle applied to *federal* sentences as well and that a judge's factual finding alone may not be used to increase a defendant's sentence. The Supreme Court granted *certiorari* on the *Booker* case on August 2, 2004 — six months after the judgment in

nonfrivolous grounds for appeal that would have caused a rational defendant to want to appeal.

In addition, the fact that Miles pled guilty and indicated he wanted a speedy resolution of the case even after he was alerted to the fact that the government would seek the 3-point enhancement under Section 3A1.2(b)(1) contributes to our conclusion that he did not reasonably demonstrate that he wanted to appeal his sentence. *See* N.T. 9/15/03 at 16-18 (stating at guilty plea colloquy that he still wished to enter guilty plea despite fact that Government would argue for additional enhancement at sentencing because "I just want to get it in a timely manner. I am accepting my responsibility. I know I did something wrong."). As was demonstrated at the evidentiary hearing and is apparent from the record, the issue of a possible enhancement under Section 3A1.2(b)(1) was raised as early as the guilty plea hearing of September 15, 2003. According to the testimony at the evidentiary hearing, the applicability of an enhancement under this section was intentionally left out of the stipulations contained in the guilty plea agreement and it was understood that the issue would be left to the Court's discretion at sentencing. Having been informed of the risk, Miles nonetheless elected to proceed with his guilty plea. Under these circumstances, we cannot say that Attorney Redmond should have been able to determine that Miles would want to appeal a sentence that incorporated the enhancement. The sentence imposed was decidedly within the realm of possible outcomes.[11]

---

Miles's case became final. *See United States v. Booker*, 542 U.S. 956 (2004) (granting *certiorari*). The *Booker* decision was issued by the Supreme Court on January 12, 2005.

    [11]    We have no reason to doubt that Miles understood the possible outcomes under the Sentencing Guidelines. While he professed more than once at the evidentiary hearing we held to being "illiterate in the law," he impressed Judge Hutton at the guilty plea hearing with his adept reading of the guidelines. *See* N.T. 9/15/03 at 13-14; *id.* at 15 (commenting to Miles that, "You know, you could teach a course to some lawyers about how to read these guidelines. Pretty good, wasn't it? That was really good.").

Upon consideration of the evidence of record and the testimony given at the evidentiary hearing, and upon application of the standards of *Flores-Ortega*, we conclude that trial counsel was not ineffective for failing to consult with Miles about filing an appeal of his sentence beyond the advice given at the end of the sentencing hearing advising Miles of his appeal rights. Given this finding, it is not necessary for us to examine whether Miles was prejudiced by counsel's performance.[12]

For the foregoing reasons, this Court's recommendation follows.

### RECOMMENDATION

**AND NOW**, this 29th day of September, 2006, it is respectfully **RECOMMENDED** that Defendant's Motion Under 28 U.S.C. § 2255 be **DENIED**. It is **FURTHER RECOMMENDED** that a certificate of appealability should **NOT ISSUE**, in that we conclude that jurists of reason would not believe that Defendant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[12] However, we note that the petitioner must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 484. For the reasons explained above, we do not believe that Miles would have timely appealed even if Redmond had spoken with him prior to January 31, 2004 regarding the advantages and disadvantages of filing an appeal.