**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | **NO. 03-417-01** |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| **RONALD MILES** | : | **NO. 05-658** |
| | : | |

**DuBOIS, J.**                                                            **JANUARY 25, 2007**

**M E M O R A N D U M**

## I. INTRODUCTION

Petitioner Roland Miles is incarcerated in the United States Penitentiary in Allenwood, Pennsylvania.  Presently before the Court is petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, which raises two grounds for relief: (1) that petitioner was denied effective assistance of counsel because counsel failed to file a notice of appeal, as instructed by petitioner; and (2) that petitioner's Fifth and Sixth Amendment rights were violated because petitioner received a three-level sentencing enhancement for assaulting a law enforcement officer under § 3A1.2(b)(1) of the November 1, 2002 edition of the United States Sentencing Guidelines (the "Sentencing Guidelines").  In addition, petitioner argues that the *pro se* § 2255 Motion is timely under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255.

For the reasons set forth below, the Court concludes that the waiver provision of petitioner's Guilty Plea Agreement precludes petitioner from collaterally attacking his sentence.  Thus, petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is dismissed with prejudice.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts and procedural history are set forth in detail in the Report and
Recommendation dated January 24, 2006 and the Supplemental Report and Recommendation
dated September 29, 2006.  Accordingly, this Memorandum sets forth only the factual and
procedural background necessary to explain its ruling.

On September 15, 2003, petitioner pled guilty to one count of being a felon in possession
of a firearm in violation of 18 U.S.C. § 922(g)(1) and entered into a Guilty Plea Agreement.
Under paragraph seven of the Guilty Plea Agreement, petitioner acknowledged the statutory
maximum sentence for a § 922(g)(1) violation, as follows: "The defendant understands, agrees,
and has had explained to him by counsel that the Court may impose the following statutory
maximum sentences for a violation of Section 922(g)(1): (1) ten years imprisonment; (2) three
years supervised release; (3) $250,000 fine; and (4) $100 special assessment."  Guilty Plea
Agreement ¶ 7.

At the change of plea hearing, the Court engaged in a colloquy with petitioner pursuant to
Federal Rule of Criminal Procedure 11(b).  Change of Plea Hearing Tr. at 19-24.  During the
colloquy, the Court read paragraph seven of the Guilty Plea Agreement into the record.  Id. at 11.
Thereafter, the Court asked petitioner to express his understanding of his potential sentence.
Petitioner stated, *inter alia*: "My understanding [is] that I could receive 10 years[;] that is the
maximum sentence."  Id. at 12.

Under paragraph nine of the Guilty Plea Agreement, petitioner further entered into the
following stipulations, under the November 1, 2002 edition of the Sentencing Guidelines: (1) that
defendant's base offense level would be determined under § 2K2.1 of the Sentencing Guidelines;

(2) that the offense level would be enhanced by two levels under § 2K2.1(b)(4) for possession of

a firearm with an obliterated serial number; (3) that the offense level would be reduced by two

levels under § 3E1.1(a) for acceptance of responsibility; and (4) that the offense level would be

reduced by one level under § 3E1.1(b) for timely notification of petitioner's intention to plead

guilty.  Guilty Plea Agreement ¶ 9.  The Guilty Plea Agreement did not include a stipulation

regarding § 3A1.2(b)(1), the Sentencing Guidelines' provision for assault on a law enforcement

officer.[1]  However, the Guilty Plea Agreement stated that additional provisions of the Sentencing

Guidelines were applicable, as follows:

> It is understood and agreed that: (1) the parties are free to argue the applicability of
> any other provision of the Sentencing Guidelines, including offense conduct, offense
> characteristics, criminal history, adjustments and departures; (2) these stipulations
> are not binding upon either the Probation Department or the Court; and (3) the Court
> may make factual and legal determinations that differ from these stipulations and that
> may result in an increase or decrease in the Sentencing Guidelines range and the
> sentence that may be imposed.

Id.

At the September 15, 2003 change of plea hearing, the government stated that it planned

to seek "two additional points for recklessly endangering a police officer while resisting arrest."

Change of Plea Hearing Tr. at 15.[2]  The Court immediately asked petitioner to consult with

---

[1]  Section 3A1.2(b)(1) of the Sentencing Guidelines provides, in relevant part: "If, in a
manner creating a substantial risk of serious bodily injury, the defendant . . . knowingly or having
reasonable cause to believe that a person was a law enforcement officer, assaulted such officer
during the course of the offense or immediate flight therefrom . . . increase by **3** levels."  U.S.
Sentencing Guidelines Manual § 3A1.2(b)(1) (2002).

[2]  The Government did not specifically refer to § 3A1.2(b) of the Sentencing Guidelines
at the September 15, 2003 change of plea hearing.  One interpretation of the record is that the
government was referring to § 3A1.2(b), but incorrectly stated it provided for a two-level
enhancement, rather than a three-level enhancement.  Another possibility is that the government
was referring to § 3C1.2 of the Sentencing Guidelines.  U.S. Sentencing Guidelines Manual

counsel regarding this possibility.  Id. at 16.  Thereafter, the Court asked petitioner: "Do you still want to enter this plea of guilty knowing what the Government's posture is going to be at the time of sentencing, what is the position they are going to take?"  Id.  Defendant responded that he wished to proceed, and explained: "I just want to get it [the guilty plea] in a timely manner.  I am accepting my responsibility.  I know I did something wrong."  Id. at 17-18.

Under paragraph ten of the Guilty Plea Agreement, petitioner further agreed to the following regarding his right to appeal or collaterally attack the Court's judgment:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> a.    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b.    If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
> I.    the defendant's sentence exceeds the statutory maximum; or
> ii.   the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.
>
> If the government does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

Guilty Plea Agreement ¶ 10.  In addition, petitioner signed an Acknowledgment of Rights, which stated "I understand that if I plead guilty, I have waived my right to appeal, except as set forth in the Guilty Plea Agreement."  Id. Attachment ¶ 6.

---

§ 3C1.2 ("If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by **2** levels."); see also Sentencing Tr. at 11 (probation officer observing that the "the parties had originally thought about the two-level for reckless flight").

At the September 15, 2003 change of plea hearing, the Court engaged in a colloquy, in which the Court read paragraph ten of the Guilty Plea Agreement into the record.  Change of Plea Hearing Tr. at 20-21.  Thereafter, the Court asked petitioner, "Being reminded of all of this, Mr. Miles, do you still wish to enter this plea of guilty?"  Id. at 21.  Petitioner answered "Yes."  Id. The Court further asked petitioner why he wished to enter a plea of guilty.  Id. at 21.  Petitioner responded that he wished to plead guilty as a means of "[t]aking, accepting responsibility for my actions that I took, sir, and just to get it done in a timely fashion and not go to trial . . ."  Id. at 23.

Petitioner was sentenced on January 21, 2004 under the November 1, 2002 edition of the Sentencing Guidelines.[3]  At the sentencing hearing, the Court concluded that petitioner's total offense level was 22, including a three-level enhancement under § 3A1.2(b)(1) for assault of a law enforcement officer.  Sentencing Tr. at 41, 11.[4]  The Court further concluded that petitioner's prior convictions placed him in Criminal History Category V.  Under the Sentencing Guidelines, the applicable sentencing range was 77 to 96 months imprisonment.  Id. at 41; see also U.S. Sentencing Guidelines Manual at 343 (2002).  The Court sentenced petitioner to, inter alia, 77 months.  Id. at 42.  At the Court's request, counsel informed petitioner of his right to appeal the sentence within ten days, and his right to counsel on appeal.  Sentencing Tr. at 44-45.

On January 22, 2004, the Clerk of Court entered the judgment of conviction and

---

[3]  Petitioner was sentenced prior to the decisions of the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) and Blakely v. Washington, 542 U.S. 296 (2004), but after Apprendi v. New Jersey, 530 U.S. 466 (2000).

[4]  Petitioner contested the facts underlying the § 3A1.2(b)(1) enhancement.  Sentencing Hearing Tr. at 12-13.  The Court adopted the government's position and stated "the facts as far as I'm concerned are clear, and I adopt the Government's and the Probation Department's view of the appropriate enhancement, based on the conduct of the defendant."  Id. at 18.

petitioner's sentence on the docket.  See Fed. R. App. P. 4(b)(6).  Petitioner did not file a direct appeal.

On February 11, 2005, petitioner filed the instant *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, which was dated January 30, 2005.[5]  On January 24, 2006, United States Magistrate Judge David R. Strawbridge filed a Report and Recommendation, recommending that the *pro se* § 2255 Motion be denied.  On February 14, 2006, petitioner filed Objection[s] to [the] Magistrate's Report and Recommendation, alleging: (1) that counsel was ineffective for failing to file a direct appeal of his sentence; (2) that the Report and Recommendation erroneously concluded that the Guilty Plea Agreement prohibited petitioner from filing a direct appeal or collaterally attacking his sentence; and (3) that the Report and Recommendation "does not give any valid reason" to dismiss that part of the *pro se* § 2255 Motion alleging a violation of petitioner's rights under the Confrontation Clause of the Sixth Amendment.

On May 12, 2006 this Court issued an Order, referring the *pro se* § 2255 Motion to Magistrate Judge Strawbridge for appointment of counsel for defendant and the holding of an evidentiary hearing on the question whether, following sentencing, petitioner instructed counsel to file a Notice of Appeal.  Pursuant to the May 12, 2006 Order, Magistrate Judge Strawbridge held an evidentiary hearing on September 25, 2006, at which petitioner was represented by a new attorney.  At the September 25, 2006 evidentiary hearing, petitioner testified and presented one additional witnesses: his attorney at the plea hearing and at sentencing.  Evidentiary Hearing Tr. at 5, 43.  The government called no witnesses.

---

[5]  See infra § IV(A).

The evidence presented at the September 25, 2006 evidentiary hearing may be summarized as follows:

Counsel testified that petitioner did not ask him to file an appeal within ten days of the January 21, 2004 sentencing hearing–or at any other time.  Id. at 17, 18, 34-35.  He further testified that he spoke with petitioner "months" after sentencing, but that he did not recall the subject matter of the conversation.  Id. at 17, 34-35, 37-38.

Petitioner testified that he spoke with counsel regarding an appeal:

Q:  Did you have a discussion with [counsel] in the courtroom after you got sentenced?
A:  Yes.
Q:  What did you say?
A:  Well, with me being illiterate to the law, sir, he – he brought up something about direct appeal.  And, I was saying, well, in my terms, I don't care what – you know, I would rather that happen, but – you know, I was so illiterate, just wanted to get where I was going.  So, –
Q:  Did you ask him for – to file an appeal for you?
A:  Yes.
Q:  At that time?
A:  Not at that time, Your Honor – I mean, Mr. Malmed.
Q:  Okay.  I'm not Your Honor yet.  I probably won't be.  But, you didn't ask him that in the courtroom?
A:  No – no, sir.
Q:  Okay.  But, you attempted to get in touch with him?
A:  Yes.

Id. 46-47.  Petitioner did not testify further regarding his alleged request that counsel file a direct appeal.  Rather, petitioner testified as to his attempts to contact counsel.

Petitioner testified that he tried to call counsel "numerous times" after the sentencing hearing.  Id. at 54.  Specifically, petitioner testified that he called counsel "once or twice" from the Federal Detention Center (FDC) in Philadelphia, where petitioner was incarcerated for three weeks following sentencing.  Id. at 55.  Petitioner testified that he did not reach counsel as a

result of these alleged calls, but that he left one message for counsel on an answering machine. Id. at 55, 60-61.  Petitioner did not testify as to the content of the alleged message.  According to petitioner, he eventually spoke with counsel "a couple months down the line" after petitioner was transferred to the United States Penitentiary in Allenwood, Pennsylvania.  Id. at 46, 54.

Following the evidentiary hearing, pursuant to the Order dated May 12, 2006, Magistrate Judge Strawbridge filed a Supplemental Report and Recommendation dated September 29, 2006, in which he analyzed the ineffective assistance of counsel claim and recommended that the *pro se* § 2255 Motion be denied.  Petitioner did not file objections to the Supplemental Report and Recommendation.

## III.  LEGAL STANDARD

Where a court refers a habeas petition to a magistrate judge, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(c).

## IV.  DISCUSSION

### A.  One-Year Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255, provides, in relevant part:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
(1) the date on which the judgment of conviction becomes final;
. . . or
(4) the date on which the facts supporting the claim or claims presented could have

8

been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  A defendant's judgment of conviction becomes final by the issuance of a final decision on direct appeal, or when the time for filing a direct appeal expires–ten days after the entry of judgment.  Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999); Fed. R. App. P. 4(b), 26; see also United States v. Massara, 174 Fed. Appx. 703, 708 (3d Cir. 2006).  Judgment is entered for the purposes of Federal Rule of Appellate Procedure Rule 4(b) "when it is entered on the criminal docket."  Fed. R. App. P. 4(b)(6).

In this case, petitioner was sentenced on January 21, 2004.  The Clerk of Court entered the judgment of conviction and sentence on the docket on January 22, 2004.  Under Rule 4(b)(6), petitioner's sentence became final ten days from the entry of judgment, on February 5, 2004.  Fed. R. App. P. 4(b)(6).[6]  Thus, the AEDPA limitations period for petitioner's § 2255 Motion expired one year from February 5, 2004, on February 5, 2005.[7]

Petitioner's original § 2255 Motion was docketed by the Clerk of Court on February 11, 2005.[8]  However, because petitioner is incarcerated, his *pro se* § 2255 Motion is deemed to be

---

[6]  See Fed. R. App. P. 26(a)(2) (providing that the time for filing a notice of appeal is computed by excluding "intermediate Saturdays, Sundays, and legal holidays"); see also United States v. Bass, 2006 WL 3825151, *2 (E.D. Pa. Dec. 22, 2006); United States v. Reed, 2006 WL 2349987, *2 n.4 (E.D. PA. Aug. 11, 2006).

[7]  "[T]he facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" on February 5, 2004.  See 28 U.S.C. § 2255.  Specifically, petitioner could have learned that a notice of appeal was not filed by requesting a docket sheet from the Clerk of Court on February 5, 2004; petitioner knew immediately that he received a three-point enhancement under § 3A1.2(b)(1) at the sentencing hearing on January 21, 2004.

[8]  Petitioner's original § 2255 Motion was not written on this Court's current standard form for filing a motion under 28 U.S.C. § 2255.  Petitioner subsequently completed the current form, which was furnished to petitioner by the Clerk of Court, pursuant to an Order dated March 11, 2005.  That was necessary because the current form contains warnings regarding the statute

filed on the date petitioner gave the petition to prison officials for them to mail.  See Burns v.

Morton, 134 F.3d 109, 113 (3d Cir. 1997) ("[W]here a *pro se* prisoner places his habeas petition

in the hands of prison authorities for mailing . . . he is completely unable to ensure that the

district court will receive his petition promptly; he remains entirely at the mercy of prison

officials."); see also Houston v. Lack, 487 U.S. 266, 271 (1988).  Petitioner signed the *pro se*

§ 2255 Motion on January 30, 2005.  This is the earliest date on which the *pro se* § 2255 Motion

could have been delivered to prison officials for them to mail.[9]  Thus, the Court concludes that

petitioner's *pro se* § 2255 Motion is timely.

## B.  Waiver of Appellate Rights and Right to Collaterally Attack a Sentence

Waivers of the right to appeal are generally valid if entered into "knowingly and

voluntarily."  United States v. Khattak, 273 F.3d 557, 558, 562 (3d Cir. 2001).  However, "an

error amounting to a miscarriage of justice may invalidate the waiver."  Khattak, 273 F.3d at 562.

---

of limitations and the requirement that a second or successive habeas petition can be filed only
with the prior approval of the Court of Appeals.  See United States v. Miller, 197 F.3d 644, 646
(3d Cir. 1999).

[9]  Petitioner originally submitted the *pro se* § 2255 Petition on a form, which contained
the following prepared text: "I declare (or certify, verify, or state) under penalty of perjury that
the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the
prison mailing system on _____ (month, date, year)."  Petitioner did not complete this
section of the form.  With regard to the lack of certification, the Court approves and adopts the
analysis of the Report and Recommendation:

> [W]e note that the form for use in Section 2255 cases in this district, which Miles
> was asked to complete following the filing of [the original § 2255 Petition], does not
> similarly request that the petitioner certify the date the petition is being turned over
> to prison officials for mailing.  See Doc. No. 19 at 8.  Because we likely would have
> accepted the execution date as the date on which Miles submitted the petition to the
> prison officials had it initially been filed on this Court's standard form, we hesitate
> to hold him to a different standard simply because he first initiated this collateral
> attack using another form.

Report and Recommendation at 7 n.7.

To determine whether a "miscarriage of justice" has occurred, courts in this Circuit consider the following factors: " 'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.' " Khattak, 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

The Third Circuit has not yet ruled on the question whether a waiver of a right to collaterally attack one's sentence under 28 U.S.C. § 2255 is valid and enforceable. Simon v. United States, 2006 WL 3534600, *4 (D.N.J. Dec. 7, 2006); see also United States v. Wilson, 429 F.3d 455, 460 n.6 (3d Cir. 2005) (declining to reach the issue). Nevertheless, a number of district courts in this Circuit have applied the Khattak standard to waivers of the right to collaterally attack one's sentence. See, e.g., Dorman v. United States, 2006 WL 3762052, *2 (E.D. Pa. Dec. 21, 2006); Simon, 2006 WL 3534600 at *5; United States v. Perez, 2006 WL 3300376, *3 (E.D. Pa. Nov. 9, 2006); United States v. Robinson, 2004 WL 1169112, *3 (E.D. Pa. Apr. 30, 2004). This Court agrees and finds that the standard set forth by the Third Circuit in Khattak is equally applicable to waivers of the right to collaterally attack a sentence pursuant to § 2255.

In the *pro se* § 2255 Petition, petitioner does not allege, much less present evidence, that his appellate waiver is invalid as unknowing or involuntary. The record supports the finding that petitioner's waiver was both knowing and voluntary under Khattak.

Under paragraph ten of the Guilty Plea Agreement petitioner "voluntarily and expressly waive[d] all rights to appeal or collaterally attack the . . . conviction, sentence, or any other

matter relating to this prosecution. . ."  Guilty Plea Agreement ¶ 10.  Under paragraph 11,

petitioner stated that he "is satisfied with the legal representation provided by the defendant's

lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant

is agreeing to plead guilty because the defendant admits that he is guilty."  Id. ¶ 11.  In addition,

petitioner signed an Acknowledgment of Rights that stated: "I understand that if I plead guilty, I

have waived my right to appeal, except as set forth in the Guilty Plea Agreement."  Guilty Plea

Agreement, Attachment, ¶ 6.

At the September 15, 2003 change of plea hearing, the Court engaged in a colloquy

pursuant to Federal Rule of Criminal Procedure 11(b), in order to "make sure that you understand

by pleading guilty what you are giving up."  Change of Plea Hearing Tr. at 18.  In this colloquy,

the Court read into the record paragraph 10 of the Guilty Plea Agreement and the

Acknowledgment of Rights.  Id. at 19-21.  Thereafter, the Court asked petitioner "Being

reminded of all of this, Mr. Miles, do you still wish to enter this plea of guilty?"  Id. at 21.

Petitioner confirmed that he did wish to enter a guilty plea.  Id.  Specifically, petitioner stated that

he wished to plead guilty as a means of "[t]aking, accepting responsibility for my actions that I

took, sir, and just to get it done in a timely fashion and not go to trial . . ."  Id. at 23.  Thus, the

Court concludes that petitioner knowing and voluntarily waived all rights to appeal or collaterally

attack the judgment against him.

The remaining question before the Court is whether enforcement of the waiver would

amount to a "miscarriage of justice."  Khattak, 273 F.3d at 562.  For the limited purpose of

answering this question, the Court now considers the merits of the *pro se* § 2255 Motion.  The

Court concludes that the *pro se* § 2255 Motion raises no meritorious claims of constitutional

error.  As such, there is no miscarriage of justice, and the waiver provision of petitioner's Guilty Plea Agreement is enforceable.

**1.  Petitioner's Ineffective Assistance of Counsel Claim**

The *pro se* § 2255 Motion asserts that petitioner was denied the effective assistance of counsel because counsel failed to file a notice of appeal, as instructed by petitioner.

"Strickland v. Washington, 466 U.S. 668 (1984), supplies the standard for addressing a claim of ineffective assistance of counsel."  United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003).  This standard requires a familiar two-part inquiry.  First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense."  Id. at 687.

"If petitioner asked his attorney to file an appeal and his attorney failed to do so, counsel's performance is ineffective under Strickland."  United States v. Edwards, 297 F. Supp. 2d 813, 816-17 (E.D. Pa. 2004).  With regard to the first Strickland prong, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  "Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes."  Id. at 477.  With respect to the second Strickland prong, "[p]rejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client."  Solis v. United States, 252 F.3d 289, 293-294 (3d Cir. 2001).  Accordingly, petitioner need not show that a direct appeal would likely have had merit.  Flores-Ortega, 528 U.S. at 477 (citation omitted).  The presumption of prejudice

13

applies even if petitioner waived all appellate rights.  See Campusano v. United States, 442 F.3d

770, 771 (2d Cir. 2006); Gomez-Diaz v. United States, 433 F.3d 788, 789 (11th Cir. 2005);

United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005); United States v. Strickland, 217

F.3d 842 (4th Cir. 2000).

      Where a defendant did not expressly ask counsel to file an appeal, courts engage in a

different analysis.  Specifically, a court must determine whether counsel breached a

constitutional duty to *consult* with the defendant regarding appeal.  See Harrington v. Gillis, 456

F.3d 118, 125 (3d Cir. 2006).  A duty to consult with the defendant regarding appeal arises in

two situations: (1) "when there is reason to think . . . that a rational defendant would want to

appeal (for example, because there are nonfrivolous grounds for appeal), or (2) [when there is

reason to think] that this particular defendant reasonably demonstrated to counsel that he was

interested in appealing."  Flores-Ortega, 528 U.S. 480; see also Solis, 252 F.3d at 293; Lewis v.

Johnson, 359 F.3d 646 (3d Cir. 2004).  With regard to this standard, the Supreme Court has

explained:

> Although not determinative, a highly relevant factor in this inquiry will be whether
> the conviction follows a trial or a guilty plea, both because a guilty plea reduces the
> scope of potentially appealable issues and because such a plea may indicate that the
> defendant seeks an end to judicial proceedings. Even in cases when the defendant
> pleads guilty, the court must consider such factors as whether the defendant received
> the sentence bargained for as part of the plea and whether the plea expressly reserved
> or waived some or all appeal rights.

Flores-Ortega, 528 U.S. at 480.  Moreover, a petitioner alleging failure to consult must establish

prejudice–that "there is a reasonable probability that, but for counsel's deficient failure to consult

with him about an appeal, he would have timely appealed."  Id. at 484.  With regard to the

prejudice inquiry, "evidence that there were nonfrivolous grounds for appeal or that the

14

defendant in question promptly expressed a desire to appeal will often be highly relevant." Id. at 485.

The threshold question before this Court is whether petitioner explicitly requested that counsel file a direct appeal. Petitioner testified at the September 25, 2006 evidentiary hearing that he asked counsel to file a direct appeal. Sentencing Hearing Tr. at 46-47. However, petitioner did not describe this request with any specificity. Indeed, petitioner testified that he did not ask counsel to file a direct appeal at the January 21, 2004 sentencing hearing, and that he did not speak to counsel again until "a couple months down the line." Id. 46-47, 54-55. Counsel testified that petitioner did not ask him to file an appeal at any time. Id. at 17, 18, 34-35. Based on this record, the Court concludes that petitioner did not ask counsel to file a notice of appeal within the ten-day period prescribed by Federal Rule of Appellate Procedure 4(b).

Because petitioner did not ask counsel to file a notice of appeal within the relevant time period, the Court must determine whether counsel had a constitutional duty to consult with petitioner regarding an appeal.[10] The Court concludes that counsel did not have such a duty because there was no reason to believe either "(1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. 480. Three factors contribute to this conclusion.

First, a "highly relevant factor" is the fact that petitioner's conviction followed a guilty

---

[10] There is a predicate question whether or not counsel consulted with petitioner regarding an appeal. In this case, neither party disputes, and the Court concludes, that counsel did not consult with petitioner about an appeal. See Evidentiary Hearing Tr. 17, 34-35, 37-38 (counsel spoke with petitioner once, "months" after sentencing, and does not recall the subject matter of the conversation); see also Flores-Ortega, 528 U.S. at 478 ("[The term] 'consult' convey[s] a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.").

plea rather than trial.  Id. at 480.  The Supreme Court has observed that a guilty plea "reduces the

scope of potentially appealable issues and . . . may indicate that the defendant seeks an end to the

judicial proceedings."  Flores-Ortega, 528 U.S. at 480.  In this case, petitioner testified at the

September 15, 2003 change of plea hearing that "I just want to get it [the guilty plea] in a timely

manner.  I am accepting my responsibility.  I know I did something wrong."  Change of Plea

Hearing Tr. at 17-18.

Second, the Court observes that petitioner did not demonstrate to counsel that he was

interested in appealing his sentence.  Petitioner testified that he did not ask counsel to file a

notice of appeal at the January 21, 2004 sentencing hearing.  In the three weeks after sentencing,

petitioner allegedly called counsel "once or twice," but did not speak with anyone in counsel's

office.  Id. at 55.  Although petitioner allegedly left one message, petitioner does not aver that

this message mentioned an appeal.  Id. at 60-61.  Petitioner took no further action to demonstrate

his interest in a direct appeal, even though counsel informed petitioner at the January 21, 2004

sentencing hearing that petitioner must file a notice of appeal within ten days and that he had a

right to counsel on appeal.  See Sentencing Tr. at 44-45.

Third, the Court concludes that counsel had no reason to believe that there were

"nonfrivolous grounds for appeal."  Flores-Ortega, 528 U.S. 480.  Counsel knew that petitioner

pled guilty and "expressly . . . waived some or all appeal rights."  Id.  Specifically, counsel knew

that petitioner waived his rights to file a direct appeal or to collaterally attack his sentence except

on the grounds that the "sentence exceeds the statutory maximum; or [that] the sentencing judge

erroneously departed upward from the otherwise applicable sentencing guideline range."  Guilty

Plea Agreement ¶ 10.  In addition, counsel knew that petitioner was sentenced within the

16

statutory maximum, and at the bottom of the applicable guideline range.  See Sentencing Tr. at 41-42.

Under these circumstances, counsel had no reason to believe that "a rational defendant would want to appeal" or that petitioner himself "was interested in appealing."  Flores-Ortega, 528 U.S. 480.  See, e.g., United States v. Wright, 180 Fed. Appx. 348, 350-51 (3d Cir. 2006) (no duty to consult with defendant regarding appeal where defendant pled guilty; was sentenced at the bottom of the Guideline range; was advised of his right to appeal; and did not express any interest in an appeal); United States v. Wales, 2006 WL 950655, *2 (10th Cir. Apr. 13, 2006) (no duty to consult where defendant pled guilty, received sentenced bargained for, and waived all appeal rights); United States v. Jones, 229 F. Supp. 2d 325, 331 (D. Del. 2002) (no duty to consult where defendant pled guilty; received sentence within expected range; was informed of his appellate rights; did not express a timely interest in an appeal; and had no nonfrivolous grounds for appeal).[11]  Thus, the Court concludes that counsel did not breach a constitutional duty to consult with petitioner regarding an appeal.

The Court further concludes that even if counsel had a duty to consult with defendant regarding an appeal, petitioner has not established the second Strickland requirement: that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an

---

[11]  The Court recognizes that petitioner contested the facts underlying the § 3A1.2(b)(1) sentencing enhancement.  However, under the Guilty Plea Agreement, petitioner agreed that "the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures."  Guilty Plea Agreement ¶ 9.  Moreover, at the September 15, 2003 change of plea hearing, the government stated that they planned to seek a sentencing enchantment "for recklessly endangering a police officer while resisting arrest."  Change of Plea Hearing Tr. at 15.  After that statement was made petitioner said he still wished to proceed with the guilty plea.  Id. at 17.

appeal, he would have timely appealed." Id. at 484.  Although petitioner allegedly called counsel "once or twice" in the three weeks following sentencing, petitioner testified that he did not reach anyone, and left only one message.  Id. at 55, 60-61.  Moreover, petitioner testified that after sentencing he "just wanted to get where I was going."  Evidentiary Hearing Tr. at 46.  In light of these facts, petitioner has presented insufficient evidence that, but for counsel's failure to consult, he would have appealed the Court's judgment within ten days.  Thus, the Court concludes that petitioner was not subject to ineffective assistance of counsel under Flores-Ortega and its progeny.

**2.  Petitioner's Sentencing Claims**

The *pro se* § 2255 Motion further asserts that petitioner's rights under the Fifth and Sixth Amendments were violated when the Court engaged in improper judicial fact finding and imposed a three-level sentencing enhancement under § 3A1.2(b)(1) of the Sentencing Guidelines. Specifically, the *pro se* § 2255 Motion states:

> [T]he 3 point enhancement that [petitioner] received for adjustment of Official Victim under (USSG) [§] 3A1.2.(b)(1) Which increased his Sentence past his base-offense level Violated his Sixth Amendment Right to a Jury finding of facts and his Fifth Amendment Right to confront all witnesses against him.  The Supreme Court has now ruled that this type of enhancement is unconstitutional in U.S. -V- APPRENDI, U.S. -V- BLAKELY and U.S. -V- BOOKER.

Section 2255 Petition at 6.  Because petitioner filed the instant § 2255 Motion *pro se*, the Court will construe petitioner's arguments liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972). Construing the motion liberally, the Court concludes that petitioner's sentencing arguments are wholly without merit.

To the extent that petitioner relies on the Supreme Court's decision in United States v.

Booker, 543 U.S. 220 (2005), his claim is barred by Teague v. Lane, 489 U.S. 288 (1989).  The

Third Circuit has made it clear that, under Teague, Booker does not apply retroactively to cases

in which the judgment of conviction was final before January 12, 2005.  Lloyd v. United States,

407 F.3d 608, 615-16 (3d Cir. 2005); see also United States v. Ramos, 2006 WL 208643, *1

(E.D. Pa. Jan. 24, 2006).  In this case, petitioner was sentenced on January 21, 2004.  Because

petitioner did not file a direct appeal, petitioner's sentence became final ten days from the entry

of the judgment, on February 5, 2004.  Fed. R. App. P. 4(b), 26(a)(2).  Thus, petitioner's

judgment of conviction became final eleven months prior to the Booker decision, and

Booker does not apply to this case.

To the extent that petitioner argues on the basis of Apprendi v. New Jersey, 530 U.S. 466

(2000), rather than Booker, petitioner's claim lacks merit.  In Apprendi, the Supreme Court held

that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

*beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a

reasonable doubt."  Apprendi, 530 U.S. at 490 (emphasis added).  Accordingly, the Court ruled

invalid a sentence that was enhanced beyond the statutory maximum based on facts found by the

trial judge by a preponderance of the evidence.  Apprendi is inapposite where a petitioner was

sentenced below the statutory maximum.  Where, as here, a petitioner is convicted under 18

U.S.C. § 922(g)(1), "Apprendi teaches that the range of imprisonment does not attain

constitutional significance until it exceeds 120 months (in terms of due process)."  United States

v. Fisher, 421 F. Supp. 2d 785, 790 (D. Del. 2006); see also United States v. Perez-Diaz, 2006

WL 208804, *2 (M.D. Pa. Jan. 26, 2006).  Thus, the Court concludes that petitioner fails to state

a valid claim under <u>Apprendi</u>.[12]

In the *pro se* § 2255 Motion, petitioner further asserts that he was denied the constitutional right to confront witnesses against him because petitioner was not permitted to cross-examine a police officer at the January 21, 2004 sentencing hearing.  Supporting Brief to § 2255 Petition at 6.  This claim lacks merit for the fundamental reason that at a sentencing hearing the "Sixth Amendment's confrontation clause does not apply . . . and reliable hearsay is generally admissible."  <u>United States v. Cabbagestalk</u>, 184 Fed. Appx. 191, 195 (3d Cir. 2006); <u>see also</u> <u>United States v. McGlory</u>, 968 F.2d 309 (3d Cir. 1992).  Thus, the Court concludes that petitioner was not deprived of his Sixth Amendment rights when he was not permitted to cross-examine an adverse witness at the January 21, 2004 sentencing hearing.

Finally, to the extent that the *pro se* § 2255 Motion states a claim under <u>Shepard v. United States</u>, 544 U.S. 13 (2005), this claim also lacks merit.  <u>See</u> Objections at 1-2 (citing <u>Shepard</u>).  In <u>Shepard</u> the Supreme Court held that courts may not examine police reports to

---

[12]  Petitioner asserts in the *pro se* § 2255 Motion that "any Sentencing Factor that increases a Defendant [sic] Sentence must be submitted to a jury and proven beyond a Reasonable doubt other than a prior conviction."  Supporting Brief to § 2255 Petition at 5.  Because petitioner filed the instant § 2255 Motion *pro se*, the Court writes further to correct any misunderstanding of sentencing law, post-<u>Booker</u>.

In <u>Booker</u>, the Supreme Court issued two different opinions.  The first, or "constitutional" opinion reaffirmed the holding in <u>Apprendi</u>.  <u>Booker</u>, 543 U.S. at 244.  The second, or "remedial" opinion remedied this constitutional violation by rendering the Sentencing Guidelines "effectively advisory."  <u>Id.</u> at 245.  The Third Circuit has explained the impact of the dual opinions, as follows:

> Combining these holdings in practice means that district courts may fact-find to increase sentences beyond the Guidelines range provided they are within the statutory minimum and maximum dictated by the United States Code, take into account the relevant sentencing factors set out in 18 U.S.C. § 3553(a), and ultimately are 'reasonable.'

<u>United States v. Gunter</u>, 462 F.3d 237, 243-44 (3d Cir. 2006).

determine whether a prior conviction for burglary is a "violent felony" for the purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).  Shepard, 544 U.S. at 23.  In this case, petitioner argues that his constitutional rights were violated when the Court "used information from the pre-sentence report and the arresting officer[']s statement" to enhance his sentence under § 3A1.2(b)(1) of the Sentencing Guidelines.  Objections at 1-2.

The Court concludes that Shepard is inapposite to this case for two reasons.  First, contrary to petitioner's argument, "Shepard does not stand for the proposition that police reports are legally insufficient for the purpose of finding sentence-enhancing facts where, as here, the sentence urged by the Government is not greater than the statutory maximum."  Fisher, 421 F. Supp. 2d at 793-94; see also United States v. Neary, 2006 WL 2871275, *3 (3d Cir. Oct. 10, 2006).  Second, Shepard does not apply to this case because it "has not been made retroactive by the Supreme Court."  United States v. Armstrong, 151 Fed. Appx. 155, 157 (3d Cir. 2005); Cluck v. Shannon, 2006 WL 1648947, *3 (E.D. Pa. June 8, 2006).  Thus, the Court concludes that the pro se § 2255 Motion does not state a meritorious Shepard claim.

In sum, the Court concludes that the pro se § 2255 Motion does not state a valid claim that petitioner's Fifth or Sixth Amendment rights were violated when petitioner's sentence was enhanced under § 3A1.2(b)(1) of the Sentencing Guidelines.

## C.  Certificate of Appealability

"At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue."  Third Cir. Loc. App. R. 22.2; see also United States v. Williams, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

A certificate of appealability shall issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where the district court

rejects a § 2255 motion on procedural grounds, a certificate of appealability shall issue when

petitioner establishes: "[1] that jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find

it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel,

529 U.S. 473, 484 (2000); see also Cooper v. Price, 82 Fed. Appx. 258, 259-60 (3d Cir. 2003).

In this case, the Court concludes that jurists of reason would not debate the Court's

conclusion that the *pro se* § 2255 Motion fails to state a valid claim of the denial of a

constitutional right.  The Court further concludes that jurists of reason would not debate the

Court's conclusion that the waiver provision of the Guilty Plea Agreement precludes petitioner

from collaterally attacking his sentence.  Thus, a certificate of appealability will not issue.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that petitioner knowingly and voluntarily

accepted the waiver provision in the Guilty Plea Agreement and that enforcing this waiver would

not work a miscarriage of justice.  Accordingly, Petitioner's *pro se* Motion to Vacate, Set Aside,

or Correct Sentence Pursuant to 28 U.S.C. § 2255 is dismissed with prejudice.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      **CRIMINAL ACTION**
     :      **NO.  03-417-01**

         **v.**      :

     :      **CIVIL ACTION**

**RONALD MILES**      :      **NO.  05-658**

     :

# <u>O R D E R</u>

**AND NOW**, this 25th day of January, 2007, upon consideration of the *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Document No. 16, filed February 11, 2005); the *pro se* Supporting Brief to Petitioner's [T]itle 28 U.S.C. 2255 Motion (Document No. 17, filed February 28, 2005); and the Government's Response to Defendant's Motion Under 28 U.S.C. § 2255 (Document No. 21, filed June 23, 2005), and after review of the Report and Recommendation of United States Magistrate Judge David R. Strawbridge (Document No. 24, filed January 24, 2006); petitioner's *pro se* Objection[s] to [the] Magistrate's Report and Recommendation (Document No. 25, filed February 14, 2006); and the Supplemental Report and Recommendation of United States Magistrate Judge David R. Strawbridge (Document No. 40, filed September 29, 2006), for the reasons set forth in the attached Memorandum, **IT IS HEREBY ORDERED** that:

1.  The Supplemental Report and Recommendation of United States Magistrate Judge David R. Strawbridge dated September 29, 2006 is **APPROVED** and **ADOPTED**, subject to the clarification set forth in the attached Memorandum;

2.  The Report and Recommendation of United States Magistrate Judge David R.

Strawbridge dated January 24, 2006, is **APPROVED** and **ADOPTED IN PART**, as follows:

      a.  The Court declines to adopt that part of the Report and Recommendation that states that petitioner's sentence became final on January 31, 2004, and instead adopts the analysis in the attached Memorandum;

      b.  The Court declines to adopt the Report and Recommendation with respect to petitioner's allegation that he was denied the effective assistance of counsel, and instead adopts the analysis in the Supplemental Report and Recommendation;

      c.  The Report and Recommendation is approved and adopted in all other respects, subject to the clarification set forth in the attached Memorandum;

3.  Petitioner's Objection[s] to [the] Magistrate's Report and Recommendation are **OVERRULED**;

4. Petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**; and,

5. A certificate of appealability will not issue on the ground that petitioner has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**
